United States District Court
Southern District of Texas
**ENTERED**
October 10, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| VICTOR ELGOHARY, derivatively on behalf § of TEXAS HALO FUND I, LLC, TEXAS § HALO J4T AFFILIATE FUND, LLC, and § TEXAS HALO J4T MANAGEMENT, LLC §     Plaintiff, § § vs. § § DAVID STEAKLEY, ANDREW CLARK, § WILLIAM WHEELOCK, ROBERT TUCCI, § SioTeX CORPORATION, JAMIE RHODES, § GEORGE STEINKE and GARY BEALL § §     Defendants. § | CIVIL ACTION NO. 4:17-cv-01534 |

**MEMORANDUM AND RECOMMENDATION
ON DEFENDANT HALO FUND MANAGERS' MOTIONS TO DISMISS AND FOR
ATTORNEYS' FEES AND DEFENDANTS SIOTEX CORPORATION, JAMIE
RHODES, GEORGE STEINKE AND GARY BEALL'S MOTION TO DISMISS AND
FOR ATTORNEYS' FEES**

This matter was referred by United States District Judge Vanessa Gilmore, for full pre-trial management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket Entry #15). Plaintiff Victor Elgohary ("Plaintiff," "Elgohary") brings this action on behalf of Texas Halo Fund I, LLC ("Halo Fund"), Texas Halo J4T Affiliate Fund, LLC ("Halo Affiliate"), and Texas Halo J4T Management, LLC ("Halo Management"). (Defendants' Notice of Removal, Exhibit ["Ex."] 1 ["Complaint"], Docket Entry #1). Plaintiff has sued Defendants David Steakley ("Steakley"), Andrew Clark ("Clark"), William Wheelock ("Wheelock"), and Robert Tucci ("Tucci") (collectively "Halo Fund Managers," "the Managers") for breach of contract, breach of fiduciary duty, negligence, and gross negligence. (Complaint ¶¶60-78). Plaintiff has also lodged claims against Defendants SioTeX Corporation ("SioTeX"), Jamie Rhodes ("Rhodes"), George Steinke ("Steinke"), and Gary Beall ("Beall") (collectively "SioTeX Defendants") for statutory fraud, fraud by nondisclosure, negligent misrepresentation, and violations of § 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission ["SEC"] Rule 10b-5, 17 C.F.R. § 240.10b-5. (Complaint ¶¶ 79-92).

Before the court are Defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Those motions have been converted by the court to ones for summary judgment to allow consideration of materials outside the pleadings that were submitted by the parties. (Halo Fund Manager Defendants' Motion to Dismiss and Motion for Attorneys' Fees ["Motion to Dismiss"], Docket Entry #5; Defendants SioTeX Corporation, Jamie Rhodes, George Steinke, and Gary Beall's Motion to Dismiss and for Attorneys' Fees and Supporting Memorandum of Law, Docket Entry #8;[1] Notice to the Parties, Docket Entry #17). A response and a reply have been filed, as have further requests for attorneys' fees in this action. (Plaintiff's Response to the Halo Manager Defendants and the SioTeX Defendants' Motion to Dismiss ["Response"], Docket Entry #13; Halo Fund Manager Defendants' Reply to Plaintiff's Response to their Motion to Dismiss ["Reply"], Docket Entry #15). After considering the pleadings, the evidence submitted, and the applicable law, it is **RECOMMENDED** that Defendants' motions be **GRANTED** for the reasons set out below.

**Background**

The Houston Angel Network, Inc. ["HAN"] provides a forum for its members to evaluate prospective capital investment opportunities in start-up ventures, to mentor the entrepreneurs of those companies, and to discuss best practices in angel investing. (Complaint ¶17; Motion to Dismiss ¶18). Texas Halo Fund I, LLC ["Halo Fund," "the Fund"] is a for-profit "sidecar fund" that was created in 2012, to give inexperienced investors an opportunity to invest alongside HAN, with limited capital exposure. (Complaint ¶18; Complaint at Ex. A ["Derivative Demand Letter"], 4). Currently, sixty-six HAN members own an interest in the Halo Fund. (Motion to Dismiss ¶19). The Fund is managed by a board made up of five individuals. (*See* Reply at Ex. E [Halo Fund Company Agreement"], 40). Three of those managers were appointed by HAN, and the remaining positions were elected by members of the Fund. (Complaint ¶23; Motion to Dismiss ¶21). The original Halo

---

[1] The motions to dismiss that were filed by the Halo Manager Defendants and the SioTeX Defendants raise essentially identical arguments. For the sake of clarity, the court will refer only to the arguments set out in the Halo Manager Defendants' motion to dismiss. (Docket Entry #5).

Fund Managers were Elgohary, Steakley, Clark, Wheelock, and Tucci. (Motion to Dismiss ¶21).

In July, 2012, Elgohary, on behalf of the Halo Fund, applied for enrollment in the State Small Business Credit Initiative ["SSBCI"]. (Complaint ¶26; Derivative Demand Letter at 5). The SSBCI is a Texas Department of Agriculture ["TDA"] initiative that facilitates the allocation of federal tax dollars for investment in private business ventures. In October, 2012, the Halo Fund was awarded $2.5 million of capital through that program. (*Id.*). The Fund then established two wholly-owned subsidiaries, Halo J4T Affiliate Fund, LLC ["Halo Affiliate"] and Halo J4T Management Fund, LLC ["Halo Management"], to maintain complete segregation of Halo Fund and TDA investments. (Complaint ¶¶27-28; Motion to Dismiss ¶22). A third entity, Texas Halo J4T Closed Fund, LLC ["Halo Closed"], was formed, as well, to administer the funds that were awarded through the SSBCI program. (Complaint ¶28; Motion to Dismiss ¶22; Reply at Ex. I ["Performance Agreement"] ¶¶ 2.10, 2.20).[2]

Elgohary was appointed the sole "manager" of Halo Management and Halo Affiliate, and he later drafted the company agreements for those entities.[3] (Complaint ¶¶28-30, 33). He testified, without contradiction, that, as manager, he enjoyed broad, unilateral authority to determine the business processes and governance of Halo Management and Halo Affiliate. (Motion to Dismiss at Ex. B-3 ["Elgohary Deposition"], 51:10-15; Reply at Ex. H ["Company Agreements"], 7, 20, 41, 44, 65; Complaint ¶29; Derivative Demand Letter at 5). For example, when exercising his "discretion," the manager is expressly permitted to consider his own interests, but "has no duty [] to consider any [] factors affecting the [entity]" or its members. (Company Agreements at 7, 44).

---

[2]The Halo Fund and Halo Management are the only members of Halo Management. (Reply at Ex. H, 4). Halo Affiliate is wholly owned by Halo Management. (Reply at Ex. H, 41). Halo Closed is wholly-owned by the Texas Department of Agriculture. (Complaint ¶28). Each of the Halo entities has designated Houston, Texas as its principle place of business. (Reply at Ex. E, 7, Reply at Ex. H, 5, 43).

[3]At a meeting on February 8, 2013, the Halo Fund Managers voted to appoint Elgohary as the sole manager of Halo Management. (Reply at Ex. F, 1). There is no evidence to show that Elgohary's appointment as the manager of Halo Affiliate was approved in the same manner.

The manager maintains absolute control over cash distributions, the approval of investment proposals, the disposal of portfolio investments, the disclosure of the companies' investment activities, and the approval of any amendments to the Company Agreements. (*Id.* at 18, 19, 20, 26, 32, 61, 64, 66, 77). In addition, the manager cannot be replaced absent his own consent, and without a two-thirds majority vote of the Halo Fund members. (*Id*. at 29, 74; Complaint ¶30). Plaintiff alleges that, as manager of Halo Affiliate, he had the authority to assign himself a 10% profits interest "for performing the functions necessary to administer the SSBCI program [and for] the [] work [that he] performed to [enroll Halo in] the program." (Complaint ¶30, 33; *see* Company Agreements at 52, 53, 63-65, 68). He alleges further that the Halo Fund members were aware of the structure of the Halo subsidiaries, prior to the execution of the Company Agreements, and that they "specifically approved" the 10% profits interest that was reserved for the manager of Halo Affiliate. (Complaint ¶31). It should be noted, however, that the Company Agreements bear the signature of Elgohary, alone. (Company Agreements at 37, 81). Plaintiff testified that he did not share the terms of the Company Agreements with the other Halo Managers before they were executed.[4] (Elgohary Deposition 49:2-50:19).

On February 4, 2013, Halo Management and the TDA executed a performance agreement that sets out Halo's participation in the SSBCI program. (Derivative Demand Letter at 6; Reply at Ex. I ["Performance Agreement"], 22). That agreement appoints Halo Management as the "Fund Manager" for the program, and creates a fiduciary relationship between Halo Management and the TDA, the state of Texas, and the US Treasury Department, in addition to any other fiduciary

---

[4]At an evidentiary hearing in another lawsuit involving Elgohary and the Halo Fund Managers, Steakley testified that Elgohary presented the Company Agreements to the Halo Fund Managers in March, 2013. (Plaintiff's Supplemental Response to the Halo Fund Manager Defendants and the SioTeX Defendants' Motion to Dismiss ["Plaintiff's Supplement"] at Ex. T, 123:14-24). Although Steakley's testimony contradicts that of Elgohary, the record, taken as a whole, could not lead a rational trier of fact to find that Elgohary has standing to bring this derivative action. *Scott v. Harris*, 550 U.S. 372, 30, 127 S.Ct. 1769, 167 L.Ed. 686 (2007). For that reason, there is no genuine issue for trial, and summary judgment is appropriate. *Id.*

4

relationships that Halo Management may have under state law. (Performance Agreement at 11; Derivative Demand Letter at 6). The Fund Manager is required to obtain the approval of the TDA before disbursing any funds for investment, and, if it fails to do so, the Performance Agreement is subject to termination. (Performance Agreement at 7, 16). Upon termination of the agreement, the Fund Manager must forfeit 25% of any distributions to which it would be otherwise entitled. (*Id*. at 16).

### *Elgohary's Removal from Halo Leadership*

On April 22, 2015, the Halo Fund Managers voted to remove Elgohary from the Halo Fund Board, as well as from his managerial role in the Halo subsidiaries. (Motion to Dismiss ¶28; Complaint ¶33). Defendants claim that Plaintiff was dismissed, because he refused to turn over financial records related to the Halo entities, and because he had drafted self-serving company agreements that "defrauded" the members of the Fund. (Motion to Dismiss ¶¶ 23, 25-27). Defendants claim further that Elgohary issued unauthorized checks to himself, in the amount of $4,183.70, for travel expenses and professional fees. (Reply at Ex. L; Reply at Ex. O). Plaintiff, on the other hand, insists that he was fired, because of a "personal vendetta" by Steakely. (Complaint ¶¶41, 43-44, 67). Elgohary is adamant that he was removed, because he questioned the manner in which the Managers had assessed and approved certain investments. (*See* Complaint ¶¶35-45, 50-53, 57-59).

On June 24, 2015, Plaintiff sent an email to the Halo Fund membership complaining about the "operation and governance" of the Fund. (Motion to Dismiss at Ex. D-1, 1). Specifically, he claimed that the Managers had refused to relay to the membership his concerns regarding the prudence of several investments, and that the Managers had not adequately considered the consequences of a proposed amendment to the Company Agreements. (*Id*. at 2-3, 4). He claims that the Halo Fund Managers believed that they had absolute authority to "do whatever they want[,]" and

5

he encouraged the Fund members to "speak up" about their disapproval of Defendants' leadership. (*Id*. at 5). Elgohary addressed the Halo Fund members at a meeting, in September, 2015, to further explain his grievances. (Motion to Dismiss ¶34). Following that meeting, the Halo Fund Managers held a vote of "no confidence," in which thirty-five of the thirty-eight voting members cast ballots in favor of Defendants. (*Id*.).

### *Litigation in State Court*

In the fall of 2015, Elgohary sued Defendants, in Travis County state court, for statutory fraud, violations of SEC Rule 10b-5, and concert of action.[5] (Motion to Dismiss ¶ 29; Motion to Dismiss at Ex. A-1 ["Travis County Suit"], ¶¶ 60-71). Plaintiff filed that suit on his own behalf, and, as a representative of Halo Affiliate and Halo Management. In the alternative, he purported to state a derivative action, on behalf of all of the Halo entities. (*See* Travis County Suit ¶¶2-6). His allegations in that case mirror those lodged here. His primary complaint was that the Halo Fund Managers refused to file suit against SioTeX. (Motion to Dismiss ¶30; Travis County Suit ¶¶50-55, 58, 68-71). After considering evidence on Elgohary's standing to bring the action, the state court found, expressly, that Elgohary "cannot fairly and adequately represent the interests of any of th[e] entities in [the] derivative lawsuit, due to his personal claims against the entities[.]" (Motion to Dismiss ¶31; Motion to Dismiss at Ex. A-2 ["Travis County Order"], 1).The court then dismissed each of Elgohary's claims. (Travis County Order at 2).

On October 20, 2015, Elgohary emailed the Halo Fund members a copy of the petition that he had filed against the Halo Fund Managers in the Travis County Suit. (Motion to Dismiss ¶35). He claimed that he had been forced to resort to litigation to resolve his dispute with the Managers.

---

[5]*Texas Halo J4T Management, LLC; Texas Halo J4T Affiliate Fund, LLC; Victor Elgohary and Victor Elgohary derivatively on behalf of Texas Halo Fund I, LLC; Texas Halo J4T Affiliate Fund, LLC; Texas Halo J4T Closed Fund, LLC; and Texas Halo J4T Management, LLC v. David Steakley; Andrew Clark; William Wheelock; Robert Tucci; Houston Angel Network, Inc.; Chris Winkler; N. Jane Pierce; Jim Lawnin; Aruna Viswanathan; David Lee; Robert Lary; Paul Pryzant; Jamie Rhodes; Robert Hemker; Mary Elizabeth Marx; Juliana Garaizar; SioTeX Corporation; George Steinke; Gary Beall; Haoran Chen; Marcus Goss; Ash Kotwal; Lisa Taylor; and Cesar Rivera*, No. D-1-GN-15-004109, (98th Judicial District Court of Travis County, Tex.).

(Motion to Dismiss at Ex. D-2). Plaintiff explained that the proceedings would "consume[] a tremendous amount of resources from all [] parties involved[,]" and that continuing the litigation was "not in [the] [] best interest[]" of the Halo Fund members. (*Id*.). Again, he encouraged the members to voice their complaints to Defendants to ensure a swift resolution of the case. (*Id*.). Elgohary later testified that he did not know of any other Halo Fund members who supported his decision to pursue the Travis County Suit. (*See* Elgohary Deposition at 157:24-158:1).

On April 15, 2016, Plaintiff brought claims against the Halo Fund Managers for defamation, and, against the Halo entities for breach of contract and quantum meruit,[6] in Harris County state court. On September 27, 2016, the state court dismissed Elgohary's defamation claim, and ordered him to pay the Halo Fund Managers $26,697 in attorneys' fees. (Motion to Dismiss ¶32; Motion to Dismiss at Ex. B-2). The court also imposed a $10,000 sanction on Elgohary to "deter [him] from bringing similar actions." (Motion to Dismiss at Ex. B-2, 2). On September 17, 2017, Plaintiff nonsuited his breach of contract and quantum meruit claims. (Halo Fund Manager Defendants' Supplement to Their Motion for Summary Judgment ["Defendants' Supplement"] at Ex. H, 1). On September 25, 2017, the state court entered a final judgment ordering Elgohary to pay $94,000 in attorneys' fees. (*Id.* at 2). Plaintiff has appealed that order. (Defendants' Supplement at 3).

***Procedural History in Federal Suit***

On March 31, 2017, Elgohary filed another derivative action against Defendants in state court, in Harris County, alleging claims for breach of contract, breach of fiduciary duty, negligence, gross negligence, statutory fraud, fraud by nondisclosure, negligent misrepresentation, and violations of § 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, 17 C.F.R. § 240.10b.[7] On

---

[6]*Victor Elgohary vs. Texas Halo Fund I, LLC; Texas Halo J4T Management, LLC; Texas Halo J4T Affiliate Fund, LLC; Andrew Clark; William Wheelock; Robert Tucci; and David Steakley;* No. 2016-24235 (215th Judicial District Court of Harris County, Tex., April 15, 2016).

[7]*Victor Elgohary, derivatively on behalf of Texas Halo Fund I, LLC; Texas Halo J4T Affiliate Fund, LLC; and Texas Halo J4T Management, LLC vs. David Steakley; Andrew Clark; William Wheelock; Robert Tucci; SioTeX Corporation; Jamie Rhodes; George Steinke; and Gary Beall*, No. 2017-22464 (129th Judicial District Court of

7

May 18, 2017, Defendants removed the case to federal court on the basis of federal question jurisdiction. (Notice of Removal ¶4). Defendants Steakley, Clark, Wheelock, and Tucci filed a motion to dismiss on June 14, 2017, and Defendants SioTeX, Rhodes, Steinke, and Beall filed a similar motion to dismiss on June 20, 2017. Plaintiff filed a motion for leave to amend his complaint to withdraw the SEC Rule 10b-5 claim on June 17, 2017. (Docket Entry #6). On that date, he also filed a motion to remand, arguing that his amended petition no longer contained federal claims. (Docket Entry #7). Plaintiff withdrew that motion, however, on September 17, 2017. (Docket Entry #16). Because each party has filed materials outside of the pleadings, on September 25, 2017, the court notified the parties that the motions to dismiss would be converted into motions for summary judgment. (Docket Entry #17).

### *Motions to Dismiss*

In their motions to dismiss, Defendants ask the court to dismiss Plaintiff's claims, because he has no statutory standing to pursue a derivative action on behalf of the Halo Fund. (Motion to Dismiss at ¶¶41-50). They argue that, because he has no standing to sue on behalf of the Halo Fund, Elgohary likewise lacks the standing to sue on behalf of the Halo Fund subsidiaries. (Motion to Dismiss ¶¶51-52). Defendants also ask the court to order Plaintiff to pay their attorneys' fees, because he brought this suit "without reasonable cause [and] for an improper purpose." (Motion to Dismiss ¶¶53-60). From a review of the pleadings, the evidence submitted, and the applicable law, the court recommends that Defendants' motions be **GRANTED**.

### Standard of Review

### *Motion to Dismiss*

In ruling on a Rule 12(b)(6) motion, the court typically may not look beyond the pleadings.

---

Harris County, Tex., March 31, 2017).

*Hall v. Hodgkins*, 305 F.App'x 224, 227 (5th Cir. 2008) (citing *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994)). "Pleadings," for purposes of a Rule 12(b)(6) motion, however, include attachments to the complaint, documents incorporated into the complaint by reference, and information subject to judicial notice. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). Documents "attache[d] to a motion to dismiss are considered to be a part of the pleadings, if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (internal quotation marks omitted); *accord Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003); *see Johnson v. Wells Fargo Bank, N.A.*, 999 F.Supp.2d 919, 926 (N.D. Tex. 2014) ("[D]ocuments are central when they are necessary to establish an element of one of the plaintiff's claims."). If a motion to dismiss includes facts beyond the pleadings, and the court considers these facts, the motion must be converted into one for summary judgment. FED. R. CIV. P. 12(d).

### *Motion for Summary Judgment*

Summary judgment is appropriate if "'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant [is] entitled to judgment as a matter of law.'" *Pustejovsky v. Pliva, Inc*., 623 F.3d 271, 275-76 (5th Cir. 2010) (quoting FED. R. CIV. P. 56(c); citing *Breaux v. Halliburton Energy Servs*., 562 F.3d 358, 364 (5th Cir. 2009)). "'Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving part[ies], there is no genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 30, 127 S.Ct. 1769, 167 L.Ed. 686 (2007) (citations omitted); *Hillman v. Loga*, 697 F.3d 299, 302 (5th Cir. 2012). Under Rule 56(c), the moving party bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005); *Taita Chem. Co. v. Westlake Styrene Corp*., 246 F.3d

377, 385 (5th Cir. 2001); *see Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). "The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the non-movant's case." *Mack v. Equable Ascent Financial, L.L.C.,* 748 F.3d 663, 665 (S.D. Tex. 2014) (citations omitted); *Boudreaux v. Swift Transp. Co*., 402 F.3d 536, 540 (5th Cir. 2005). "'If the moving party fails to meet its initial burden, its motion for summary judgment must be denied, regardless of the non-movant['s] response.'" *Exxon Mobil Corp. v. U.S.*, Nos. H-10-2386, H-11-1814, 2015 WL 3513949, *at 15 (S.D. Tex. June 4, 2015) (quoting *Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002). If the moving party has met its Rule 56 burden, the non-moving party cannot merely rest on the allegations in his pleadings. *See Lincoln*, 401 F.3d at 349-50; *see also Kee v. City of Rowlett,* 247 F.3d 206, 210 (5th Cir. 2001). Rather, he is required to "'go beyond the pleadings'" and produce probative evidence to show "'that there is a genuine issue for trial.'" *Kee*, 247 F.3d at 210 (citations omitted); *Boudreaux*, 402 F.3d at 540; *see Izen v. Catalina*, 398 F.3d 363, 366 (5th Cir. 2005). If he does so, his evidence "is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503, 507 (5th Cir. 2003); *see Hillman,* 697 F.3d at 302. However, if the non-movant fails to respond appropriately, or if he fails to respond at all, summary judgment is not awarded to the moving party simply by default. *See Ford-Evans v. Smith*, 206 Fed. Appx. 332, 334 (5th Cir. 2006); *see also Day v. Wells Fargo Bank Nat. Ass'n*, 768 F.3d 435, 435 (5th Cir. 2014). Instead, as always, summary judgment is appropriate only if the moving party has demonstrated the absence of a genuine issue of material fact, and shown that judgment is warranted as a matter of law. *See Adams v. Travelers Indem. Co. of Conn*., 465 F.3d 156, 164 (5th Cir. 2006); *Day,* 768 F.3d at 435.

**Discussion**

    A derivative action permits an individual shareholder of a corporation to file suit on the

entity's behalf as "a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers." *Aztec Oil and Gas Inc. v. Fisher*, 152 F.Supp.3d 832, 839 (S.D. Tex. 2016). Such an action may be pursued only if the plaintiff shows that he fairly and adequately represents the interests of the shareholders who are similarly situated in enforcing the rights of the corporation or association. FED. R. CIV. P. 23.1; TEX. BUS. ORG. CODE § 101.452(2). When pursuing a derivative action, the plaintiff owes the company his "undivided loyalty." *Smith v. Ayers*, 977 F.2d 946, 949 (5th Cir. 1992). Indeed, a claimant may not have ulterior motives, and he must not be pursuing an external personal agenda. *Id.* The trial court, in its discretion, may determine whether such a personal agenda exists, and its determination will not be reversed on appeal, absent clear error. *Id.* The court may consider various factors in determining whether a plaintiff is an adequate representative, including, other litigation pending between the plaintiff and defendants, and whether the derivative action may be leveraged in the other suit; the relative magnitude of the plaintiff's personal interest in the company, as compared to his interest in the derivative action itself; the plaintiff's vindictiveness toward the defendants; and finally, the degree of support the plaintiff has received from the shareholders that he purports to represent. *Ayers*, 977 F.2d at 948, 949; *Blum v. Morgan Guaranty Trust Co.*, 539 F.2d 1388 (5th Cir. 1978); *Sved v. Chadwick*, 783 F.Supp.2d 851, 859 (N.D. Tex. 2009).

### *Other Litigation Against Defendants*

In this case, Plaintiff has not met the fair and adequate representation standard of FRCP Rule 23.1. At the outset, it should be noted that, on September 25, 2017, a state court dismissed a lawsuit in which Eloghary sought to recover personal damages from the entities that he claims to speak for here. The state court entered a final judgment ordering Plaintiff to pay $94,000 in attorneys' fees and a $10,000 sanction. Elgohary later appealed that order. Indeed, any attorneys' fees that the Halo Fund Managers are unable to obtain in that lawsuit will inevitably detract from the dividends that

the Halo Fund members would otherwise be paid. Although a plaintiff is "not necessarily [prohibited] from bringing [a derivative action] [] simply because some of his interests extend beyond that of the class, the court may take into account outside entanglements that render it likely that the representative may disregard the interests of the other class members." *Blum*, 539 F.2d at 1390. Here, it is clear that Elgohary has given little consideration to the position of the other Halo Fund members, and, instead, seeks to serve his own personal interests at their expense. In fact, Plaintiff admits as much in an email to the Halo Fund members, in which he acknowledges that continuing litigation between himself and the Halo Fund was "not in [the] [] best interest[]" of the Halo Fund Members. (Motion to Dismiss at Ex. D-2). Moreover, it is significant that the Texas Department of Agriculture terminated the Fund's participation in the SSBCI program, specifically because of Plaintiff's lawsuits. The TDA was explicit that it chose to "suspend[] all investment activity with [the] Halo Fund[,]" because Elgohary sued the TDA in his Travis County suit. (Reply at Ex. F-1). Exclusion from the SSBCI program has surely impaired the Fund's ability to engage in investment opportunities, and, consequently, negatively impacted the Fund's profit margin. On this record, it is clear that Plaintiff's pursuit of his personal interests detrimentally affected the interests of the Halo Fund members.

Further, it is logical to assume that Plaintiff may attempt to use this derivative action as leverage in the other litigation. Indeed, Elgohary's pleadings plainly demonstrate his propensity to use legal proceedings to advance his position in other pending litigation. In fact, he specifically points to the Halo Fund Managers' accumulation of "excessive expenses on litigation [] in furtherance of [] a personal vendetta advanced by Steakley and Clark[,]" as a justification for bringing claims here. (Complaint ¶67). However, Steakley testified that a substantial portion of the "excessive" legal costs about which Elgohary complains, have been disbursed to defend against his lawsuits against the Halo entities. (Reply at Ex. F, ¶3). On these facts, it is entirely forseeable that

Plaintiff may attempt to use his control over this derivative action as leverage in his appeal of the state court judgment. It is for this precise reason that courts are reluctant to allow a derivative action to go forward when the proponent of the action is involved in other proceedings with the same defendants. *Blum*, 539 F.2d at 1390 (holding that plaintiff's personal litigation with defendants impaired his ability to fairly and adequately represent the interests of the shareholders in the derivative action); *Sunset Management, LLC ex rel. Transcontinental Realty Investors, Inc. v. American Realty investors, Inc., et al.*, No. Civ. A. 3:04-CV-2161-K, 2005 WL 1164181, at *1 (N.D. Tex. May 16, 2005) (holding that plaintiff was not a proper shareholder representative because it was pursuing "separate direct litigation claims" against defendants). It is apparent, then, that this factor counsels against permitting Elgohary to act as a representative of the Halo entities.

### *Plaintiff's Stake in Entity*

Next, the court must consider the relative magnitude of the plaintiff's personal interest in the corporation, as compared to his interest in the derivative action itself. *Ayers*, 977 F.2d at 948. Plaintiff's membership interest in the Halo Fund is three-fourths of 1% of the $2.5 million capital entrusted to the entity, which amounts to $18,750. (Motion to Dismiss ¶47). In this lawsuit, Plaintiff hopes to recover millions of dollars in compensatory damages, in addition to exemplary damages, attorneys' fees, and court costs. Elgohary's interest in the corporation is insignificant in comparison to what he seeks to recover in this case. *Ayers*, 977 F.2d at 948. As Defendants point out, Plaintiff wants to recover ten times the amount of his initial investment in his personal suit against the Halo entities. (Motion to Dismiss ¶47). Given the stark contrast between Elgohary's financial stake in the company, and the damages that he seeks to recover from Defendants in his lawsuits, he cannot be said to fairly and adequately represent the interests of the Halo Fund members.

### *Vindictiveness Toward the Defendants*

Plaintiff's complaint is replete with allegations that indicate Plaintiff's desire to use this suit

as a means to vindicate an affront that he apparently suffered at the hands of the Managers. He repeatedly refers to defamatory statements allegedly made by Defendants. (Complaint ¶¶ 41, 43, 44). These "defamatory" statements, however, have no bearing on the merits of this case. Plaintiff's forced removal from the Halo Fund Board and his managerial roles in the Halo subsidiaries are likewise irrelevant to this action. (Complaint ¶ 44). Because it is clear that Elgohary harbors a grudge against Defendants, he should not be permitted to represent the Halo Fund members in this action.

### *Support From Other Shareholders*

Finally, Plaintiff has not received any support for this action from the other Halo Fund members. Despite repeated attempts to garner support for his position, Elgohary has not been able to do so. On two occasions, Plaintiff has complained to the Halo Fund membership about the Managers' governance of the Fund. On June 24, 2015, and October 20, 2015, Elgohary published his grievances to the other Halo Fund members. (Motion to Dismiss at Ex. D-1; Motion to Dismiss at Ex. D-2). Plaintiff admits that, despite having done so, he has not been able to rouse backing for litigating this claim. (Elgohary Deposition at 157:24-158:1). Moreover, after hearing Elgohary discuss his criticism of the Managers at a meeting in September, 2015, the Halo Fund members expressed their overwhelming support of the Managers in the "no confidence" vote favoring the Halo Fund Board. (Motion to Dismiss ¶34). It is clear, on this record, that Plaintiff did not have support from the other shareholders to pursue this action, and, as such, he is not qualified to represent the Halo Fund in this "derivative" action. *Ayers*, 977 F.2d at 948 (lack of support from other shareholders found to be "significant[]" in court's adequate representation inquiry in a purported derivative action).

In sum, Plaintiff cannot adequately represent the Halo Fund. Elgohary is actively engaged in personal litigation against the companies that he intends to represent in this case. For the reasons

discussed, if permitted to go forward here, Plaintiff is likely to use this action as leverage in his personal suit. In addition, Elgohary's potential recovery in this case towers over his initial investment in the Halo Fund, and his hostility toward Defendants is apparent on the face of his Complaint. Finally, Plaintiff has not been able to garner any shareholder support for bringing this action. On this record, there is no evidence to show that Elgohary can "fairly and adequately represent" the interests of the Halo Fund members. For that reason, it is recommended that Plaintiff's claims lodged on behalf of the Halo Fund be dismissed.

### *Double Derivative Action*

Plaintiff likewise lacks standing to sue on behalf of Halo Management or Halo Affiliate. Texas law requires that a derivative action plaintiff be a member of the entity that he intends to represent. TEX. BUS. ORG. CODE §101.452. In this case, Elgohary is not a member of either of the Halo subsidiaries. Plaintiff's only other avenue to bring this claim is "double derivative" standing.

"'In a 'double derivative' action the shareholder is effectively maintaining the derivative action on behalf of the subsidiary, based upon the fact that the parent or holding company has derivative rights to the cause of action possessed by the subsidiary.'" *Sneed v. Webre*, 465 S.W.3d 169, 189 (Tex. 2015) (quoting *Blasband v. Rales*, 971 F.2d 1034, 1043 (3rd Cir. 1992)). These actions are predicated on the parent company shareholder's "equitable ownership interest" in a subsidiary. *Sneed*, 465 S.W.3d at 190, 192 (citing *Roadside Stations, Inc. v. 7HBF, Ltd.*, 904 S.W.2d 927, (Tex. App. —Fort. Worth 1995, no writ)). The Texas Supreme Court has held that "[i]t is axiomatic that standing to assert a derivative action on behalf of a wholly owned subsidiary requires standing to assert a derivative action on behalf of the parent corporation." *Sneed*, 465 S.W.3d at 193. Here, Plaintiff may not maintain a "double derivative" action on behalf of Halo Management and Halo Affiliate, because he has no standing to assert a derivative action on behalf of the parent company, the Halo Fund. *Id.* For that reason, it is recommended that the claims asserted on behalf

of Halo Management and Halo Affiliate be dismissed, as well.

### *Attorneys' Fees*

Defendants request the court to order Plaintiff to pay the attorneys' fees that were incurred in defense of this claim. (Motion to Dismiss ¶¶53-60). Under Texas law, a court may order a derivative action plaintiff to pay the "expenses [that] the [] company or other defendant incurred in investigating and defending the proceeding[,] if the court finds [that] the proceeding has been instituted [] without reasonable cause or for an improper purpose[.]" TEX. BUS. ORG. CODE §101.461 (b)(2). "Expenses" as defined under this section, include "attorney[s'] fees" and any "costs of pursuing an investigation" of the subject matter of the derivative suit. *Id.* at §101.461(a).

The evidence is clear that Elgohary brought this action "without reasonable cause." In the Travis County suit, the district court dismissed his claims, because he lacked standing to bring the action. (Travis County Order at 1). The Travis County court found, expressly, that Elgohary "cannot fairly and adequately represent the interests of any of th[e] entities in [the] derivative lawsuit, due to his personal claims against the entities[.]" (Motion to Dismiss ¶31; Motion to Dismiss at Ex. A-2 ["Travis County Order"], 1). To be sure, Defendants reminded Elgohary of the Travis County judge's ruling in response to his demand letter before he filed this action. (Motion to Dismiss at Ex. C-1, 1). Defendants' attorney stated that "Elgohary's inability to fairly and adequately represent the interests of the Halo Fund entities have not changed." (*Id.*). Plaintiff filed this suit anyway, lodging claims identical to those set out in the Travis County suit, notwithstanding that court's ruling and the express notice provided by Defendants. Given these facts, Elgohary should have known that he lacked standing to bring another derivative action on behalf of the Halo entities. As such, the court has no difficulty in determining that Plaintiff brought this suit "without reasonable cause." TEX. BUS. ORG. CODE §101.461 (b)(2). For that reason, the court recommends that Plaintiff be required to pay Defendants' reasonable attorneys' fees.

In sum, Plaintiff has no standing to bring a derivative action on behalf of the Halo Fund due to his personal litigation against Defendants, the size of his contribution to the Halo Fund, his hostility toward the Defendants, and his inability to obtain support from the Halo Fund members for this lawsuit. Because Plaintiff has no standing to bring a derivative action against the Halo Fund, he likewise lacks standing to bring a derivative action on behalf of the Halo subsidiaries. Defendants should be awarded attorneys' fees, because it is apparent that Plaintiff brought this action without reasonable cause.

**Conclusion**

Accordingly, it is **RECOMMENDED** that Defendants' motions to dismiss be **GRANTED**.

It is further **RECOMMENDED** that Plaintiff be ordered to pay Defendants' reasonable attorneys' fees.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77028; copies of any such objections shall be delivered to the chambers of Judge Vanessa Gilmore, Room 9513, and to the chambers of the undersigned, Room 7007.

**SIGNED** at Houston, Texas, this 10th day of October, 2017.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**